IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ALETA POWELL, | * | |
|     Plaintiff, | * | |
|       v. | * | Civil Action No. RDB-13-0219 |
| PALISADES ACQUISITION XVI, LLC, et al., | * | |
|     Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Plaintiff Aleta Powell asserts claims against the Defendants Palisades Acquisition XVI, LLC, Fulton Friedman & Gullace LLP, and John Does 1-10[1] (collectively, "Defendants") for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301, *et seq.* via the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201, *et seq.* Pending before this Court are Plaintiff's Motion for Partial Summary Judgment on the Issue of Defendant Fulton, Friedman & Gullace, LLP's Liability (ECF No. 22) and Defendants' Cross Motion for Summary Judgment (ECF No. 23). The parties' submissions have been reviewed and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Plaintiff's Motion (ECF No. 22) is DENIED and Defendants' Motion (ECF No. 23) is GRANTED.

---

[1] Discovery has been completed, but no individual Defendants have been named.

BACKGROUND

The Plaintiff, Ms. Powell, is a Maryland resident.  Am. Compl. ¶ 13, ECF No. 6. Defendant Palisades Acquisition XVI, LLC ("Palisades") is a debt collector licensed in Maryland.  *Id.* ¶¶ 15-19.  Fulton Friedman & Gullace LLP (FF&G) is a law firm retained by Palisades to assist in debt collection.  *Id.*  In 1998, Powell opened a credit card account with Direct Merchants Bank.  Deposition of Aleta Powell 13, ECF No. 23-3.  Powell testified that she opened the credit card to help with moving expenses, and later to make purchases for her apartment.  *Id.* at 13.  She was laid off from her job at the National Education Association in 2000, and eventually defaulted on the credit card account.  *Id.* at 14.  The Plaintiff testified that from approximately 2002 to 2006, she ran a child care business at least partially out of her home, but cannot recall whether she ever used the Direct Merchants card for that or any other business expenses.  *Id.* 10-15.  Direct Merchants charged off the account on January 31, 2001, with an outstanding balance of $8,205.24.  Compl. ¶ 23.  Direct Merchants assigned the debt to Platinum Financial Services Corporation, which hired the firm of Wolpoff & Abramson ("W&A") to collect.  *Id.* ¶ 26.  After the filing of a lawsuit in the District Court of Maryland for Baltimore City, Powell entered a settlement agreement with Platinum, through W&A.  *Id.* ¶¶ 26-27.  From April 2002 until March 2003, Powell made regular payments on the debt totaling $3,250.00, but beginning in April 2003, she was unable to make the payments as agreed in the settlement.  Compl. ¶ 29.  Platinum, through W&A, moved for judgment pursuant to the settlement agreement.  *See* Motion for Judgment, ECF No. 23-11.  On June 24, 2003, a consent judgment was entered in favor of

Platinum and against Powell in the amount of $8,205.24,[2] with pre-judgment interest in the amount of $1,011.19, for a total judgment of $9,216.43, plus attorneys' fees of $1,230.78 and costs of $50.00. Judgment, ECF No. 23-2. The parties agree that as of that date, Powell owed a total of $10,497.21. Pl.'s Mem. 9, ECF No. 22-1; Defs.' Mem. 5, ECF No. 23-1.

The Baltimore City District Court also assessed post-judgment interest on the total judgment of $9,216.43 at the statutory rate of 10%.[3] Md. Rule 3-604(a) ("Any pre-judgment interest awarded shall be separately stated in the decision and included in the judgment."). Platinum, again through W&A, filed a Request for Garnishment on August 21, 2003, ECF No. 23-13, and in September 2003, Powell agreed to make monthly payments of $150.00, and increase the payments to $250.00 per month in September 2004. *See* Agreement, District Court of Maryland for Baltimore City Case No. 8968-01, ECF No. 22-6. Powell made eighteen regular $150.00 payments totaling $2,700.00 until May 2005. Compl. ¶ 30. The payments never increased to the agreed-upon $250.00. Defs.' Mot. 3, ECF No. 23-1. The Defendants assert that Powell has not made a payment on the debt since May 25, 2005. *Id.* Powell, for her part, states that she made eighty-five payments to Platinum and W&A, but provides no evidence of the dates or amounts of these payments. Pl.'s Mot., ECF No. 22-1.

---

[2] The Defendants state that because Powell had been paying only the prejudgment interest on the debt, the principal amount remained the same. Defs.' Mot. 6, ECF No. 23-1; Mann Bracken Client Work Card, ECF No. 22-15. The debt accrued $4,261.19 of prejudgment interest, to which Powell's payments of $3,250.00 were applied. *Id.*

[3] The parties seem to disagree as to the effect of the award of interest on the total amount of Powell's debt, but that calculation is immaterial to the pending motions.

On March 5, 2007, Palisades purchased the judgment against Powell from Platinum.[4] Compl. ¶ 32. W&A continued to handle Powell's account for Palisades until 2008, when W&A merged into Mann Bracken, LLP. Mann Bracken then handled the account until 2010, when it filed for receivership. NCO Financial Systems, the servicing agent for Palisades, subsequently retained the Defendant Fulton, Friedman & Gullace to handle Powell's account. Defs.' Mot. 4, ECF No. 23-1. NCO provided FF&G with Powell's account history as retained by W&A and Mann Bracken. When the account was transferred to FF&G on February 8, 2010, the total opening balance was $10,526.88. Declaration of Allen B. Friedman, ECF No. 23-18.[5]

On or about June 30, 2010, FF&G notified Powell by letter that it was handling her account. Letter of June 30, 2010, ECF No. 23-19. Although Defendants state that her total outstanding balance on that date was $13,466.93, the letter mistakenly stated that the total due was $8,137.81. ECF No. 23-19. Powell maintains that she had never heard of Palisades until the Assignment was filed in Baltimore City District Court. Powell Dep. 19-20, ECF No. 22-4. She mistakenly thought her debt had been paid in full. *Id.* at 56, ECF No. 22-7. There was no further correspondence between FF&G and Powell until May 29, 2012. Defs.' Mot. 3, ECF No. 23-1. Interest continued to accrue on Powell's debt and on that date, the Defendants assert that Powell owed a total of $15,009.81. Declaration of Scott T. Whiteman, ECF No. 23-2.

---

[4] This was accomplished through two transactions. First, Platinum sold the judgment to non-party Palisades Acquisition XV, LLC, which then sold it to Defendant Palisades Acquisition XVI, LLC. ECF No. 23-1 at 4.
[5] Mr. Friedman, a former W&A employee, left before the merger and subsequently formed FF&G with two other lawyers. Declaration of Allen B. Friedman, ECF No. 23-18.

On May 29, 2012, Palisades, through FF&G, filed an Assignment of Judgment form in the District Court of Maryland for Baltimore City, a copy of which was received by Powell. Compl. ¶¶ 33, 38; Assignment of Judgment, ECF No. 23-20. The Assignment of Judgment stated that she owed a judgment in the amount of $10,497.21 plus attorneys' fees of $1,230.78, and did not list the $2,700.00 in payments made pursuant to the settlement from 2003 to 2005. Assignment of Judgment, ECF No. 23-20. The bottom of the Assignment of Judgment states, "This is a communication from a debt collector." *Id.*

Powell filed a Motion to Vacate the Assignment on September 5, 2012. In an effort to correct the error on the Assignment, Palisades, filed an Amended Assignment of Judgment on the day of the hearing on the Motion to Vacate. Amended Assignment of Judgment, ECF No. 23-21; Transcript, Case No. 8968-01 at 45-46, ECF No. 23-22. However, the District Court of Maryland for Baltimore City granted the Motion on October 10, 2012. *See* Transcript, Case No. 8968-01, ECF No. 23-22. The state court vacated the entire June 24, 2003 judgment on the grounds that Palisades did not produce evidence of a valid assignment and had no records of the payments made on the debt by Powell. *Id.* at 51.

On appeal, the Circuit Court of Baltimore City held a hearing and affirmed the state District Court. Mem. Op. & Order, Case No. 25-C-13-000005, ECF No. 22-11. The Court of Appeals of Maryland denied Palisades' petition for certiorari on July 5, 2013. Pet. Docket 139, Sept. Term, ECF No. 22-12. Accordingly, Powell avoided any further payment of a debt which was clearly owed.

The Plaintiff filed the subject complaint in the Circuit Court for Baltimore City on December 11, 2012. ECF No. 6. On January 22, 2013, the Defendant removed the case to

this Court. The case was originally assigned to Judge Russell of this Court, but after a conflict became apparent, ECF No. 21, the matter was reassigned on July 20, 2013. Discovery has been completed, and both parties moved for summary judgment.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

When faced with cross-motions for summary judgment, a court "review[s] each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). In undertaking this inquiry as to each individual motion, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party, *id.*, but only if there is a "*genuine*" dispute as to those facts. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting *Anderson*, 477 U.S. at 247-48 (emphasis in original))). This Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt*

*v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

ANALYSIS

The Plaintiff moves for summary judgment as a matter of law solely as to whether Defendant FF&G's filing of the Assignment in May 2012 violated the Fair Debt Collection Practices Act as stated in Count I. Defendants move for summary judgment as to both Plaintiff's federal and state law claims. For the reasons that follow, the Plaintiff's Motion is denied, and the Defendants' Motion is granted.

**I.     Consumer Debt**

At the outset, both the Plaintiff and the Defendants argue that they are entitled to summary judgment on the issue of whether the debt in this case is a consumer debt, and thus whether the Fair Debt Collection Practices Act applies at all.[6] Pursuant to the FDCPA, a debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the

---

[6] The Defendants do not contest the fact that the FDCPA applies to both of them. Palisades's principal business is debt collection, 15 U.S.C. § 1692a(6), and FF&G is a law firm that "regularly" engages in debt collection activities and is therefore subject to the Fair Debt Collection Practices Act. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

7

subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). The plaintiff has the burden to establish that the debt at issue is a consumer debt. *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 336 (4th Cir. 2012) (per curiam) (affirming grant of summary judgment in favor of defendant where plaintiff failed to establish element of FDCPA claim that credit card debt was consumer debt). While there is no binding Fourth Circuit precedent as to how to determine a consumer debt, this Court has recently analyzed the question by examining the substance of the transaction out of which the obligation to repay arose as a whole. *Puffinberger v. Commercion, LLC*, No. SAG-13-1237, 2014 WL 120596, at *7 (D. Md. Jan. 10, 2014) (quoting *Boosahda*, 462 F. App'x at 335 (quoting decisions of the Seventh and Ninth Circuits)).

In this case, the "transaction" or "transactions" at issue are those which Powell made with the Direct Merchants credit card, but remained unpaid at the time she defaulted in 2001. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (basing a debt collector's obligation on the character of the debt when it arose, not when it is to be collected). A debt incurred through personal use of a company card can be a consumer debt for FDCPA purposes. *Perk v. Worden*, 475 F. Supp. 2d 565, 569 (E.D. Va. 2007). Conversely, it stands to reason that a personal credit card could be used such that the primary purpose of the purchases made with the card was business.

Powell testified at her deposition that she began to carry a balance on the Direct Merchants Credit card when she purchased "things" for her apartment. Powell Dep. 13, ECF No. 23-22. Although the Plaintiff states in her briefing that the debt is comprised completely of purchases she made for personal or household purposes, she testified that she

ran a business out of her apartment around the time in question, and that she does not recall whether she used the Direct Merchants credit card for business expenses. *Id.* at 10-13. It is not the province of this Court to make credibility findings when ruling on a motion for summary judgment. *Meyers v. Balt. Cnty., Md.*, 713 F.3d 723, 730 (4th Cir. 2013). As such, neither party has adduced sufficient evidence of the primary purpose of purchases made with the Direct Merchants credit card that would allow this Court to rule as a matter of law. *See Puffinberger*, 2014 WL 120596, at *8 (holding that a genuine issue of material fact remained where plaintiff could not recall specific purchases made with credit card, but was not a business owner and had never been in business while owning the credit card). Therefore, a genuine issue remains as to the material fact of whether the debt in this case is a consumer debt. Accordingly, it would be inappropriate to grant summary judgment either to Plaintiff or Defendants as to the issue of whether the debt is a consumer debt subject to the FDCPA.

## II.     The Assignment Was Not an Action to Collect a Debt

The Defendants are nevertheless entitled to summary judgment because the Assignment of Judgment is not subject to the FDCPA. The FDCPA applies only to conduct taken "in connection with the collection of any debt," 15 U.S.C. §§ 1692e, or "to collect any debt," 15 U.S.C. § 1692f. *See also Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 500 (D. Md. 2004) ("It is well established that 'the threshold requirement for application of the FDCPA is that prohibited practices are used in an attempt to collect a debt.'" (quoting *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994))). The only representation at issue in this case is the Assignment of Judgment filed on May 29, 2012 in

the District Court of Maryland for Baltimore City.[7] It is a matter of first impression whether filing an Assignment of Judgment pursuant to Maryland Rule 3-624 is an act of "collection" that triggers the protections of the FDCPA.

In determining whether other acts constitute collection actions for FDCPA purposes, this Court as well as other district courts within the Fourth Circuit have employed a three-factor test: (1) whether the communication included a demand for payment or had the "animating purpose" to induce payment; (2) the relationship between the parties; and (3) the purpose and context of the communication. *See, e.g.*, *Olson v. Midland Funding, LLC*, No. CCB-13-1882, 2013 WL 6717480, at *4 (D. Md. Dec. 18, 2013) (letter) (quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010)); *Penn v. Cumberland*, 883 F. Supp. 2d 581, 587-88 (E.D. Va. 2012) (pleadings); *Johnson v. Brock & Scott, PLLC*, No. 5:11-CV-474-F, 2012 WL 4483916, at *15-16 (E.D.N.C. Sept. 27, 2012) (letters and telephone calls).[8]

In this case, although the only relationship between the parties is that of a debtor and debt collector, the other factors weigh against finding that the Assignment is subject to the FDCPA. First, the Assignment contained no demand for payment. Filing the Assignment simply served to establish the rights of the parties by recording the amount and ownership

---

[7] Because the Plaintiff alleges that she never heard of Palisades before 2012, the June 30, 2010 letter informing Powell that FF&G was servicing her account on Palisades's behalf cannot be at issue because she claims that she never received it. Moreover, any claim based on that letter is barred by the FDCPA's statute of limitations, 15 U.S.C. § 1692k(d) because it was sent longer than one year before the filing of Plaintiff's Complaint. In her Complaint, Powell alleges that Defendants sent another letter in September 2012, but has provided no evidence in support of that allegation. Also, Powell does not move for judgment on the basis of the Amended Assignment filed in October 2012. Thus, the May 2012 Assignment is the sole document at issue.

[8] The parties couch their arguments in terms of a "communication" as defined in § 1692c. The three-factor test applies as well to claims for "false, deceptive, or misleading representations" under § 1692e such as Powell's claims in this case. *See Olson*, 2013 WL 6717480, at *4 n.6 (citing *Gburek*, 614 F.3d at 382 (equating the phrase "in connection with the collection of any debt" in the two provisions)).


of the judgment. While filing the Assignment was a step to ultimately collecting the debt, the fact remains that the Assignment itself does not have any power to induce payment; the Defendants would have had to take separate action to collect any money from Powell. *See* 13 Md. Law Encyclopedia, Judgments § 140 ("When a judgment has been assigned in writing by the judgment holder, the assignment must be duly filed, and once such filing is accomplished it may be enforced in the name of the assignee to the extent of the assigned interest."). Moreover, providing information that may have the effect of inducing payment does not demonstrate that the purpose of the communication is to collect. *See Olson*, 2013 WL 6717480, at *5-6 (holding that an informational letter that included a link to a website containing a "Make a Payment" button was not subject to the FDCPA). Thus, it cannot be said that collection is the animating purpose of the Assignment.

As to the final factor, the purpose and context of the filing of the Assignment also counsel against application of the Fair Debt Collection Practices Act. The Assignment was a representation to a state court.[9] Some courts have treated particular state court pleadings as subject to the FDCPA. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229-32 (4th Cir. 2007) (representations in interrogatories and motion for summary judgment were covered by FDCPA); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010) (complaint served on consumer to facilitate debt collection is a communication under FDCPA). The Assignment in this case, however, is more analogous to a proof of claim filed in a

---

[9] The Assignment was also sent to the Plaintiff. Whether the information reached Powell directly or indirectly through the court is of no moment. 15 U.S.C. § 1692a(2); *Sayyed*, 485 F.3d at 232. However, not every communication with a debtor is made in connection with collection efforts. *Olson*, 2013 WL 6717480, at *4. Additionally, although the Assignment reads, "This communication is from a debt collector," ECF No. 23-20, courts have consistently held that the presence or absence of this statutorily required phrase is not dispositive. *See, e.g.*, *Boohsada*, 462 F. App'x at 334.

11

bankruptcy proceeding than to a pleading filed in a collection lawsuit against the debtor. *See Covert v. LVNV Funding, LLC*, No. DKC-13-0698, 2013 WL 6490318, at *6-8 (D. Md. Dec. 9, 2013) (dismissing FDCPA, MCDCA, and MCPA claims based on allegedly unlawful proofs of claim). In *Covert*, Judge Chasanow of this Court held that filing a proof of claim in a bankruptcy proceeding was not debt collection activity within the meaning of the FDCPA. *Id.* While the Fourth Circuit has not yet addressed the exact issue, the majority of courts have held that "the FDCPA is inapplicable to the filing of proofs of claim in bankruptcy cases, regardless of whether the underlying claim is stale or invalid for any reason." *Id.* at *6-7 (collecting cases, quotation marks omitted). Even inflated proofs of claim are not subject to the FDCPA. *Lisier v. Citibank, N.A.* (*In re Lisier*), Bkr. No. 09-17326PM, 2010 WL 4941475, at *2 (Bankr. D. Md. Nov. 24, 2010) (citing *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95-96 (2d Cir. 2010)).

An Assignment of Judgment filed pursuant to Maryland Rule 3-624, like a proof of claim, serves to establish the ownership and amount of a debt through a court's approval. *See Covert*, 2013 WL 6490318, at *7 ("The filing of a proof of claim is a request to participate in the distribution of the bankruptcy estate under court control." (quoting *In re McMillen*, 440 B.R. 63, 80 (Bankr. N.D. Ga. 2010))). Filing an Assignment of Judgment is not an action against a consumer, but rather a request to the court that it recognize a right of the filing party. While this Court notes that bankruptcy cases are different in that a creditor who files a proof of claim is prohibited from taking action against the debtor, who is protected by the automatic stay *id.*, a debt collector's ability to eventually enforce an Assignment of Judgment against a debtor does not change the fact that the Assignment itself is not an action against

the debtor. It simply preserves the rights of the assignee by establishing the rightful owner of a judgment. The Defendants in this case sought to do just that. The erroneously high amount listed is irrelevant as to this issue because there were never any efforts to actually collect the debt from the Plaintiff. *See In re Lisier*, 2010 WL 4941475, at *2.

In sum, filing the Assignment was not an action to collect a debt and is not subject to the Fair Debt Collection Practices Act. Therefore, the Defendants are entitled to judgment as a matter of law on the Plaintiff's federal claims for violations of 15 U.S.C. §§ 1692e and 1692f in Count I.[10]

### III.   Count I - Fair Debt Collection Practices Act

Even if the Fair Debt Collection Practices Act ("FDCPA") applied to the Assignment, the Defendants would still be entitled to judgment as a matter of law on Count I.

#### A.   FDCPA § 1692e

Section 1692e of the FDCPA prohibits a debt collector from using a false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A). The FDCPA is a strict liability statute and a consumer need only prove one violation to trigger liability. *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 725 (D. Md. 2011). For a false statement to be actionable under the FDCPA, a plaintiff must show that the misrepresentation would mislead the "least sophisticated customer." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). There is, however, a requirement that the misrepresentation be material. *See Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013)

---

[10] For the same reasons, as well as additional grounds discussed in Part IV.B of this Memorandum Opinion, the Defendants are also entitled to summary judgment on Plaintiff's state law claims.

(per curiam) (establishing that there is a materiality requirement in the Fourth Circuit). "[T]he fact that a statement is in a significant court document does not make it material *per se,* but rather one must look at the statement itself, in context, to determine whether it is material." *Penn v. Cumberland*, 883 F. Supp. 2d 581, 587-88 (E.D. Va. 2012) (dismissing claims based on technical, but immaterial, misrepresentations in demurrer and plea in bar filed in Virginia state court). *Id.*

The Defendants acknowledge that the amount of the judgment listed in the Assignment of May 2012 is incorrect.  Whiteman Dep. 96-98, ECF No. 22-7.  Looking at the misstatement of the amount of the judgment in context, however, it is immaterial even to the least sophisticated consumer.  At the time of the filing of the Assignment, Powell was under the impression that she had paid her debt in full, which she acknowledges was a mistake on her part.  Powell Dep. 56, ECF No. 22-7.  Whiteman Decl., ECF No. 23-2.  Although the question of materiality is not analyzed based on her subjective belief, the least sophisticated customer who thought no debt was owed at all would not reasonably act differently based on whether the judgment amount was stated with exact precision.  Any reasonable consumer in that circumstance would have contested the Assignment regardless of whether the judgment amount was technically correct and regardless of the identity of the debt collector.  If information would not affect the least sophisticated consumer's choice of how to act, it cannot be material.  *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) (characterization of debt as "balance" when some was interest and some was principal was immaterial when total was correct).

Moreover, from the evidence presented in this case, it appears beyond doubt that on May 29, 2012, Powell owed significantly more on the Direct Merchants credit card account than the amount of the judgment stated.[11] The fact that she has succeeded in avoiding further payment because of the Defendants' errors[12] at the state court level does not give rise to a windfall based on statutory damages. There was no violation of § 1692e because the misrepresentation was not material.

### B. FDCPA § 1692f

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect any debt." 15 U.S.C. § 1692f. The statute provides examples of unfair or unconscionable conduct, including "[t]he collection of any amount . . . unless such amount is authorized by the agreement creating the debt or permitted by law" or "[t]aking or threatening to take any nonjudicial action to effect disablement of property," as well as provisions relating to postdated payments and improper methods of communication. *Id.* Section 1692f also allows courts to punish unfair or unconscionable conduct that is not otherwise covered by the FDCPA. *Id.*; *Lembach*, 528 F. App'x at 303.

---

[11] This Court makes no finding as to the correct amount of the total debt, as opposed to the amount of the judgment. Despite Powell's seeming refusal to acknowledge that interest accrued on the judgment, it is not necessary to determine the exact figure owed to dispose of her FDCPA claims. In addition, Powell does not move for summary judgment as to her claim against Palisades for misrepresenting that it is the owner of the debt. Although the Maryland state courts concluded that Palisades had not proven that it owned the judgment, the Plaintiff makes no argument that she did not actually owe a debt to Palisades and provides no evidence of the eighty-five payments she allegedly made. Therefore, in the face of the evidence on the record here establishing that Palisades was the owner of the debt, it appears the Plaintiff has abandoned this claim.

[12] Although the Defendants argue that they are entitled to the "bona fide error defense," 15 U.S.C. § 1692k(c), that affirmative defense does not apply to errors of law. Because the Defendants made an error of Maryland law as to what amounts are included in a judgment, their error was not bona fide and the defense cannot apply.

Viewing the facts in the light most favorable to Powell as the non-moving party, there is no evidence that the Defendants acted unfairly or unconscionably in violation of the statute. While the Defendants in this case made an error as to the amount of the judgment against the Plaintiff, "false but non-material representations are not likely to mislead the least sophisticated customer and therefore are not actionable under §§ 1692e or 1692f." *Lembach*, 528 F. App'x at 303 (quoting *Donohue*, 592 F.3d at 1033). Despite the clerical error in the amount of the judgment, the Defendants merely attempted to properly use the judicial process in order to establish the parties' respective rights. It does not follow from the fact that the state court case was not resolved in the Defendants' favor, that filing the Assignment of Judgment was frivolous or done in bad faith. As for any conduct not enumerated in § 1692f, the Defendants' actions in this case were not repetitious or otherwise harassing. Accordingly, the Defendants would be entitled to judgment as a matter of law as to the Plaintiff's claim Fair Debt Collection Practices Act claim, even if the Act applied to the Assignment.

**IV.    Maryland Law Claims**

This Court, in its discretion, exercises supplemental jurisdiction over Powell's state law claims under the Maryland Consumer Debt Collection Practices Act ("MCDCA") and the Maryland Consumer Protection Act ("MCPA"). 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy . . . ."). Both the MCDCA and the MCPA require plaintiffs to show an attempt to collect a debt. *See* Md. Code Ann., Com. Law §§ 14-202(8), 13-303(5). Because, as

discussed above, the filing of the Assignment was not a collection activity, the protections of the MCDCA and MCPA were not triggered in the first place. *Covert*, 2013 WL 6490318, at *8. Furthermore, Powell's state law claims also fail for the additional reasons set forth below.

### A. Count II - Maryland Consumer Debt Collection Act Claim

Pursuant to the MCDCA, a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8) (West 2013). As this Court has previously noted, unlike the FDCPA, the MCDCA is not a strict liability statute. *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 511 (D. Md. 2004). With regard to claims made pursuant to Section 14-202(8) of the Commercial Law Article for attempting to enforce a right, this Court has held that defendants can be held liable when they act "with actual knowledge or reckless disregard as to the falsity of . . . the existence of the right." *Allen v. Bank of Am., N.A.*, 933 F. Supp. 2d 716, 729 (D. Md. 2013). In addition, a violation of the MCDCA is also a per se violation of the MCPA, Md. Code Ann., Com. Law § 13-301(14)(iii). *Id.* "[T]he MCDCA only allows recovery against creditors that attempt to collect debts when there is no right to do so. It does not, as [plaintiff] contends, allow for recovery based on errors or disputes in the process of procedure of collecting legitimate, undisputed debts." *See Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 464 (D. Md. 2013) (debt collector not liable for filing improper foreclosure documents when there was a right to foreclose).

It is not disputed that Powell owed a debt on the Direct Merchants credit card account. Regardless of the correct amount of the debt, or the Defendants' ability to prove

17

its ownership as the assignee, when the Defendants filed the Assignment, the evidence shows that they legitimately believed they had the legal right to do so. The rulings of the state courts are not inconsistent with this belief. Those decisions merely held that the amount of the judgment listed in the Assignment was incorrect and that the Defendants had not proved their ownership of the debt. This Court concludes, as a matter of law, that the Defendants did not attempt to enforce a right with knowledge or reckless disregard as to the non-existence of that right and thus did not violate the MCDCA.

### B. Count III - Maryland Consumer Protection Act Claim

The Plaintiff asserts that, by violating the MCDCA, the Defendants also violated the MCPA. Although an MCDCA violation is also a per se violation of the MCPA, Md. Code Ann., Com. Law § 13-301(14)(iii), as discussed above, the Defendants have not violated the MCDCA. Because Powell does not argue that there is an independent basis to find a violation of the MCPA, the Defendants are entitled to summary judgment on this claim. Accordingly, the Defendants' Motion is granted as to Count III.

### V. The *Rooker-Feldman* Doctrine

Finally, Powell argues that granting summary judgment in favor of the Defendants violates the *Rooker-Feldman* doctrine by disturbing the rulings of the Maryland District and Circuit Courts. The *Rooker-Feldman* doctrine establishes that a federal district court does not have appellate jurisdiction to overturn a state court judgment. *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 727-28 n.7 (D. Md. 2011) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983)). The Fourth Circuit has noted that the *Rooker-Feldman* doctrine is a "narrow

18

doctrine" in that it precludes federal court "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." *Adkins v. Rumsfeld*, 464 F.3d 456, 463-64 (4th Cir. 2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Contrary to the Plaintiff's argument, this case does not implicate the *Rooker-Feldman* doctrine. The Maryland District and Circuit Courts, in vacating the 2003 Judgment, held that as to the Assignment of Judgment, Palisades misstated the amount of the judgment and failed to present sufficient evidence of ownership. In this case, the Defendants do not appeal that ruling, but merely defend against the Plaintiff's charges of violations of the FDCPA, MCDCA, and MCPA. The grant or denial of the parties' Motions for Summary Judgment has no effect on whether the Plaintiff owes a debt, the amount of any debt, or the creditor to whom any debt may be owed. By the same token, Powell's federal and state law claims could have existed independent of the state court decision vacating the judgment. *Johnson v. Brock & Scott, PLLC*, No. 5:11-CV-474-F, 2012 WL 4483916, at *14 n.11 (E.D.N.C. Sept. 27, 2012). This Court has undertaken no review of any of the decisions of the Maryland state courts with regard to the operative facts of this case. In sum, this Memorandum Opinion merely states that the Defendants have committed no statutory violations and thus raises no *Rooker-Feldman* issue.

## CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Partial Summary Judgment (ECF No. 22) is DENIED and the Defendants' Motion for Summary Judgment (ECF No. 23) is GRANTED.

A separate Order follows.


Dated:  January 29, 2014                               /s/
                                                       Richard D. Bennett
                                                       United States District Judge